# EUGENE M. WILSON

## *vs.*

# A. JACKSON BELL.

B. & W., partners, becoming embarrassed, the partnership was dissolved, the assets, including divers parcels of land, were placed in W's hands in trust to be used in settling the affairs of the firm, and B. afterwards empowered W., in consideration of the necessity of his having fuller power for the proper settlement of the affairs of the late firm, to mortgage said lands as he might see fit. Said firm was indebted to the estate of W.'s father, in which debt W. was interested to the extent of one-seventh thereof as a legatee under his father's will, of which he was one of three executors. W. thereafter, in pursuance of said authority, executed a mortgage on said land, with the usual power of sale, to his co-executors, to secure said debt. Said mortgagees afterwards proceeded to foreclose the same, by sale upon advertisement pursuant to the statute. At the sale, W., being at the time the only executor who had qualified in Minnesota, bid off sundry parcels as such executor, and in behalf of said estate, and one M., bid off other parcels in his own name for his own use. Said purchases were made fairly and in good faith and the property brought all it was then worth. *Held*, that the sales to M. could not be set aside in a proceeding to which he was not a party ; that the mortgage was valid being expressly authorized by B ; a sale under it by proper proceedings, *per se*, therefore, legal ; and the sale to M. valid in any case, he standing in no fiduciary relation to B. and no one standing in any such relation being interested with him in his purchases.

*Held*, further, that the mortgage being in law B's mortgage, the fact that W. was interested thereunder was immaterial, and the executors named therein as mortgagees, might, under *Comp. Stat. ch.* 75, *s.* 9, have bid off the property as such executors, and therefore, the purchase by W. for the same purposes, and merely in his representative capacity, was equally valid.

The plaintiff and defendant were partners, under the name of Bell & Wilson, in the business of buying and selling real estate. In the year 1859 the partnership was dissolved and Wilson was entrusted with all the property of the late firm and with the duty of settling its affairs. To carry out this arrangement defendant and wife conveyed to plaintiff all their interest in the real estate of the late firm, (a large portion of which was situated in Hennepin county,) in trust for the benefit of the firm. Subsequently and on the 22d January, 1861, the defendant by deed referring to the before mentioned conveyance, "in consideration of said Eugene M. Wilson being trustee of said estate, and of his having increased liabilities therefor, of the necessity of his having fuller power for the proper settlement of the affairs of the late firm of Bell & Wilson," granted him "full power to grant and convey said premises and mortgage the same as he may see fit."

On the 21st February, 1861, the plaintiff, as trustee, mortgaged all the firm real estate situated in Hennepin county to Lowry Wilson and Eliza B. Wilson, executor and executrix of Edgar C. Wilson, plaintiff's father, to secure a large sum due to the estate of the latter from the firm of Bell & Wilson. Under Edgar C. Wilson's will the plaintiff was entitled to one-seventh of the testator's estate.

On the 8th September, 1864, the real estate thus mortgaged was sold by the sheriff upon a foreclosure of the mortgage by advertisement, the firm of Wilson & McNair, of which the plaintiff was a member, being the attorneys of the mortgagees in the foreclosure proceedings. At the time of the foreclosure the plaintiff was also one of the executors of his father's will, and as such executor, and for the use and benefit of the estate, he bid off at the sale a large portion of the mortgaged property, the remainder being bid off by one Mendenhall and by other parties.

Wilson v. Bell.

This action was brought in the district court for Hennepin county to recover (among other things) the sum of $13,960.56 claimed to be due to the plaintiff for money advanced by him in the settlement of the affairs of the firm of Bell & Wilson. The defendant in his answer denied that anything was due from him to plaintiff and alleged that the latter had paid all the firm debts out of its assets, and still held a large amount of property, real and personal, in trust for the firm. He further charged that various breaches of trust had been committed by plaintiff, and particularly that the before mentioned mortgage and the foreclosure under the same were in violation of said trust and were void, and prayed that the same might be declared null and void, and be all set aside and vacated, and that all said land be declared to be the property of Bell & Wilson. He also prayed for a full accounting, for judgment for any balance found due him, and for other relief..

The cause was referred to Samuel R. Thayer, Esq., to take the testimony and report the facts. Upon the coming in of his report, the court decided that the foreclosure proceedings could not be sustained, and that the mortgaged lands must be regarded as assets in the hands of plaintiff as trustee of Bell & Wilson, subject to the mortgage. The court further held that the plaintiff could not recover for the partnership debts paid by him without first accounting for partnership property in his hands, and referred the action back to the referee for further proof in relation to the amount and value of the remaining partnership assets, including the land covered by the mortgage.

From this decision and order the plaintiff appeals.

WILSON & McNAIR, for Appellant.

ATWATER & FLANDRAU, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The district judge sustains the mortgage made by the appellant as trustee of Bell and Wilson to the executors of his father's will. In this we think he is clearly right. In the instrument executed by Bell on Jan. 22d, 1861, the appellant is expressly authorized to mortgage the premises conveyed to him in trust " as he may see fit."

The respondent contends that, " giving effect to the whole instrument, it is manifest that the power to mortgage can only be exercised in case it is shown that the trustee has incurred increased liabilities."

It grants to the trustee " full power to grant and convey said premises and mortgage the same as he may see fit," "in consideration of said Eugene M. Wilson being trustee of said estate, and of his having increased liabilities therefor, of the necessity of his having fuller power for the proper settlement of the affairs of the late firm of Bell and Wilson." Not only is there here a recital of the fact that the trustee *has* incurred liabilities, but the respondent's construction overlooks the fact that the power to mortgage is given in consideration of the necessity of fuller power for the proper settlement of the affairs of said late firm, one of which was its debt to the estate of E. C. Wilson.

The instrument, therefore, expressly recognizes the necessity of a power in the trustee to make just such a mortgage.

Since the mortgage is valid, it follows that the judge erred in setting aside the foreclosure sale under it as to the purchase by Mendenhall, and others than the appellant, for two reasons.

1st. They are no parties to this action, and, 2ndly, if they were, they were under no disability to purchase for their own benefit ; for they stood in no fiduciary relation to Bell, and no person standing in any such relation was in any way interested with them in their purchases, and the equitable maxim, that a

Wilson v. Bell.

trustee is disabled to purchase for his own benefit at a sale of the trust property, is all that is, or can, so far as appears on this record, be urged against the validity of the sales on this foreclosure, even against those of the appellant.

For if the mortgage were valid, a sale of the property under it on foreclosure by proper proceedings must *per se* have been legal; and no fraud or unfairness of any kind appears to be imputable to any purchaser, and the uncontradicted testimony is that the property brought all it was then worth.

The further question remains as to whether the decision of the court below, can be sustained so far as respects the property bid off by the appellant as executor under the will, acting for and in behalf of the estate of E. C. Wilson    This question also, must in our opinion, be answered in the negative.

The general rule in equity, that a purchase by a trustee from his *cestui que trust*, though he may have given an adequate price and gained no advantage, is voidable at the option of the *cestui que trust*, [*Baldwin vs. Allison*, 4 *Minn*. 25, 30,] is said by the appellant not to be applicable here, inasmuch as the reason on which it rests does not exist, for, on account of his much larger interest in the assets of Bell and Wilson than in the mortgage debt, his actual and deep interest was that the property should sell to the best advantage, so that his personal interest did not in any way clash with his duty towards the *cestui que trust*. But we do not place our decision on this ground, although if the old maxim *cessante ratione, cessat et ipsa lex*, be not obsolete, this case would seem to fall within its scope.

Were it not for the statute, the general rule would of course have been as applicable to these mortgagees if *they* had bid off the property as executors, even though the appellant had not been a beneficiary under the will, as it would be to the appellant; a mortgagee with power of sale being treated in

Wilson v. Bell.

equity as a trustee for sale, who cannot, except by express authority of his *cestui que trust*, purchase the mortgaged property. 1 *Lead. Cas. in Eq., p.* 128.

*Comp. Stat. ch.* 75, *sec.* 9, however, under which this sale took place, provides that the mortgagee, his assign, or his or their legal representatives, may fairly and in good faith purchase the premises so advertised, or any part thereof, at such sale.

These mortgagees were but trustees for those beneficially interested under the will of E. C. Wilson, to whose benefit the purchase would ensure. Of these the appellant was one. He was also the co-executor of the mortgagees and, though not named as a mortgagee, had at the time of the sale an equal authority and responsibility with them in the management and disposition of the property.

He was the legal representative of those beneficially interested in the mortgage debt. That he was the only executor who had qualified in Minnesota, seems to have been the only reason, (for convenience of future disposition,) why he should have bid the property off in his name, rather than in those of his co-executors.

Buying as executor, and on behalf and for the benefit of the estate, he could gain no advantage to himself thereby, beyond what he could if the purchase had been made in the name of his co-executors.

If Bell could not complain of a purchase by them, he could not complain of one by appellant, who is but their agent. *Baldwin vs. Allison*, 4 *Minn.* 25.

The real question is, therefore, whether these mortgagees could themselves have bid off the property as executors for the benefit of the estate.

As mortgagees they were trustees of Bell, but, by the express words of the law, might nevertheless purchase.

Would the fact that their purchase would be in truth to the

appellant's use, to the extent of his interest as legatee, have availed to deprive them of the benefit of the statute? There is no other objection to their buying, and it is the only circumstance which distinguishes this case from *Baldwin vs. Allison,* so far as the present question is concerned.

It is very clear that it could have no such effect. Bell authorized the appellant to make the mortgage. This makes it good, though one of the beneficiaries was his trustee under the assignment, and it would have made it good, if the trustee had been the sole beneficiary; if for instance there had been no other legatee under E. C. Wilson's will. Being made in pursuance of express authority from Bell, it is in law, neither more nor less, than the mortgage of Bell himself. So considered, the fact that appellant was Bell's trustee under the assignment is at once seen to be wholly immaterial, and affords no ground for excepting this sale from the operation of the statute.

The fact that the sale was subject to redemption within a year at seven per cent. interest, may also, however, be adverted to, as constituting a distinction so material between such a sale and the sales upon which the general rule arose, as to supply a sufficient reason for the abrogation of the rule by the statute, and for holding said statute to be properly applicable to this case. Purchases at our foreclosure sales do not pass the title till the expiration of the time of redemption; till then the mortgagor retains possession, and as against the purchaser, is yet owner of the fee, the former having a vested right to nothing but his money and interest.

In such a state of facts and in a community where money was and is, and will for a long time to come be in active demand at rates far higher than that allowed on redemption as aforesaid, no *bona fide* sale could ever be made if the mortgagee were not allowed to bid. The provision in question is therefore a necessity for both parties.

For the mortgagee the sale is a step in the collection of his debt, fixing a definite date after which it would be paid either in money or land, while it protected the mortgagor from a sacrifice of his land, giving him, as it were, a breathing-space within which to find the means of payment.

Its general propriety and expediency being thus unquestionable, the absence of any practical necessity for excepting this case from its operation is very apparent, when we consider that Bell could as *cestui que trust* of the mortgagor have compelled a redemption at any time, before redemption expired, at which the value of the property would have justified it, even against the appellant's wishes.

As the district court erred in setting the sale aside, the order referring back the case to the referee for further proof as to the amount and value of the remaining partnership assets, including the lands covered by the mortgage, must be reversed so far as it respects said lands.

These being laid out of the case, the appellant insists that the referee's report shows the full value of all the partnership assets remaining in plaintiff's hands, and that there is no need of further testimony to decree the balance due plaintiff on account. The decision of the court below seems to go upon the idea that, if the mortgage sale had been sustained, it would not have ordered any further reference; but in the fragmentary state of the evidence as presented by the return, we do not undertake to say how that would have been.

As no appeal lies from a decision, the notice of appeal in this case states nothing which is appealable except the order referring the cause back to ascertain the value of the mortgaged property.

That however is reversed.